NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

———————————————————
                                                    :
Arthur Chassen, et al.                              :
                                                    :          Civil Action No. 09-291 (PGS)
            Plaintiffs,                             :
                                                    :               OPINION
                        v.                          :
                                                    :
Fidelity National Financial, Inc., et al.           :
                                                    :
            Defendants.                             :
———————————————————:

SHERIDAN, U.S.D.J.

      The present case is a class action complaint brought by plaintiffs, Arthur Chassen, Deborah

Meredith, Glen J. Dalakian, Joel Oster, Dennis Scrimer, Jack and Deborah Hoffman, Kathleen

Cooper, Richard Murphy, and Ami Feller (collectively "Plaintiffs"), against thirteen defendant

companies, Fidelity National Financial, Inc, Fidelity National Title Insurance Company, Chicago

Title Insurance Company, Lawyers Title Insurance Corporation, Transnation Title Insurance

Company, The First American Corporation, The First American Title Insurance Company, Stewart

Information Services Corporation, Stewart Title Guaranty Company, Old Republic International

Corporation, Old Republic Title Insurance Group, Inc., Old Republic National Title Insurance

Company, and Weichert Title Agency, Inc (collectively "Defendants").  Plaintiffs allege causes of

action for (1) breach of contract (count I); (2) violation of a settlement agreement (counts II and III);

(3) violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. §56.8-1, *et. seq.* (counts IV

and V); (4) racketeering (count VI); and conspiracy, RICO conspiracy, and aiding and abetting

(count VII).

Defendants move this Court to dismiss the amended class action complaint under Federal Rules of Civil Procedure 8, 9(b), 12(b), and 19 for failure to state a claim and failure to join indispensable and necessary parties.  Additionally, Fidelity National Financial, Inc., The First American Corporation, Stewart Information Services Corporation, Old Republic International Corporation, and Old Republic Title Insurance Group, Inc. (collectively "Parent Defendants") move this Court to dismiss them entirely from this law suit for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).

## STATEMENT OF FACTS

Plaintiffs, all New Jersey residents, purchased, financed, or refinanced residential real estate property in New Jersey during the six years prior to the complaint.  Plaintiffs allege that at the title settlements or closings, the settlement agents intentionally overcharged them fees to record deed and mortgage instruments that were greater than the amount allowed by statute.  Each of the Plaintiffs' payments, including fees to record deeds and mortgages, were made in accordance with a HUD-1 Uniform Settlement Statement (HUD-1) mandated pursuant to the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq*.  The settlement agents allegedly prepared the HUD-1s, accepted funds from each Plaintiff, and were responsible to disburse these funds appropriately. Plaintiffs allege that these individual settlement agents were agents of the Defendants, or the Parent Defendants' subsidiaries, and thus each Defendant is liable on the title policy.  The settlement agents are not sued.  The remaining Defendants are either title insurance underwriters or those underwriters' parents or holding companies.  According to Plaintiffs, the settlement agents certified that the HUD-1s accurately reflected the funds to be disbursed, but were false with regard to the recording fees.

2

After each closing was complete, the settlement agents presented Plaintiffs' deeds and/or mortgages for recording to the county clerk and the county recording fees. Plaintiffs allege that the settlement agents charged more than the county offices charged for recording, and then kept the additional amounts. For example, in the case of plaintiff Meredith, it is alleged that her HUD-1 form indicated that her recording fees were $120.00 for the deed and $300.00 for the mortgage; and Meredith paid these amounts to the settlement agent. (Compl. ¶¶ 21-22.) Plaintiffs allege that the actual recording fees paid by the settlement agent to the county were $80.00 for the deed, and $210.00 for the mortgage. (Compl. ¶ 23.) In this case, a difference of $130.00. Each of the Plaintiffs allege a similar discrepancy between the amount actually tendered to the settlement agent and the actual cost of recording the instruments. Plaintiffs allege that each of these additional amounts were "retained and misappropriated" by the settlement agents for their benefit, with the acquiescence of the various defendant title insurance companies.[1]

On each HUD-1 form the settlement agent signed the document confirming that: "The HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds disbursed or to be disbursed by the undersigned as part of the settlement of this transaction." (Compl. ¶ 25.) Prior to the actual closings, the defendant underwriter companies issued closing-service letters ("CSLs") to the Plaintiffs, which according to the defendants provide protection to the lenders for losses caused by the settlement agents. Plaintiffs allege that it was the "acquiescence" of the title insurance companies in the "fraud" and "misappropriation" by the settlement agents that makes them liable. (Compl. ¶ 31.)

---

[1] Plaintiffs allege that the damages are undisputed, however, the damages may be unclear. *See generally* Real Estate Settlement Procedures Act (RESPA): Rule To Simplify and Improve the Process of Obtaining Mortgages and Reduce Consumer Settlement Costs, 73 FR 68204-01 (summarizing rule amendment to 24 C.F.R Pts 203 and 3500); N.J. Land Title Ins. Rating Bureau, Manual of Rates and Charges, § 7-1.

3

## I.  Motion to Dismiss for Lack of Personal Jurisdiction

The Court will address first the Parent Defendants' motion to dismiss for lack of personal jurisdiction.

### A.  Personal Jurisdiction--Standard

Pursuant to Fed. R. Civ. P. 12(b)(2), a complaint may be dismissed for lack of personal jurisdiction.  "If an issue is raised as to whether a court lacks personal jurisdiction over a defendant, the plaintiff bears the burden of showing that personal jurisdiction exists." *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007).  "To meet this burden, the plaintiff must establish either that the particular cause of action sued upon arose from the defendant's activities within the forum state ('specific jurisdiction') or that the defendant has 'continuous and systematic' contacts with the forum state ('general jurisdiction')." *Provident Nat'l Bank v. CA Fed. Sav. & Loan Assn.*, 819 F.2d 434, 437 (3d Cir. 1987) (citations omitted).  Under Fed. R. Civ. P. 4(k) "'a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state.'" *Marten*, 499 at 296 (citing *Provident Nat'l Bank*, 819 F.2d at 437; Fed. R. Civ. P. 4(k)(1)(A)).  Pursuant to the New Jersey long-arm rule, N.J. Court R. 4:4-4(c), personal jurisdiction in New Jersey "extends to the limits of the Fourteenth Amendment Due Process protection." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992).  Therefore, this Court is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice,' inhering in the Due Process Clause of the Constitution." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Those notions require that a defendant have certain minimum contacts with the forum state based upon the defendant's own purposeful availment "of the privilege of conducting activities within the forum State, thus invoking the benefits and

4

protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Unilateral activity on the part of the plaintiff will not cause the defendant to be subject to personal jurisdiction in that forum. *Id.*

Despite the broad New Jersey rule, it is a well established principle that the forum contacts of a "subsidiary corporation will not be imputed to a parent corporation for jurisdictional purposes without a showing of something more than mere ownership." *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 609 (D.N.J. 2004) (citing *State, Dep't of Environ. Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J.1983); *Leo v. Kerr-McGee*, 1996 WL 254054, at *5 (D.N.J. May 10, 1996); *Pfundstein v. Omnicom Group Inc.*, 285 N.J. Super. 245, 666 A.2d 1013, 1016 (1995)). A court must consider "whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded." *Lucas v. Gulf & Western Indus., Inc.*, 666 F.2d 800, 806 (3rd Cir. 1981), *abrogated on other grounds by EF Operating Corp. v. American Bldgs.*, 993 F.2d 1046 (3d Cir.1993); *accord Cannon Mfg. Co. v. Cudahy Co.*, 267 U.S. 333, 336-37 (1925). Whether the Court has personal jurisdiction over the Parent Defendants depends on whether Plaintiffs have demonstrated that the settlement agents are the "alter-ego" or "agent" of the Parent Defendants. *Seltzer*, 339 F. Supp. 2d at 609 (citing *Patent Incentives, Inc. v. Seiko Epson Corp.*, 1988 WL 92460, at *4 (D.N.J. Sept. 6, 1988)). In order to evaluate this issue, the Court must consider whether Plaintiffs have pled any facts that warrants finding that the relationship between the Parent Defendants and the settlement agents could be classified as an "alter ego relationship." *See Leo*, 1996 WL 254054, at *6.

5

B.  Personal Jurisdiction over the Parent Defendants

Plaintiffs' Amended Complaint alleges in a conclusory fashion that the Parent Defendants are "leading providers of insurance" and that they conduct business in New Jersey through the subsidiaries they own.  Plaintiffs allegations with respect to all the Parent Defendants are the same. For example, as to Fidelity National Financial, Inc., Plaintiffs make the following allegations which is the same for all the Parent Defendants:

> (1) has done business in the State of New Jersey at all times relevant to this lawsuit;
>
> (2) is engaged directly and/or through its wholly owned subsidiaries in the issuance of title insurance policies to consumers and residents of the State of New Jersey insuring title to Property;
>
> (3) has accepted funds from consumers to facilitate the purchase and/or finance Property in accordance with the RESPA,
>
> (4) has designated and authorized various persons and/or companies as the Defendants' agents to accept funds from consumers to facilitate the purchase and/or finance Property in accordance with RESPA
>
> (5) has issued CPLs or CSLs to consumers relating to the purchase and financing of said property.

The affidavits submitted on behalf of the Parent Defendants contradict Plaintiffs' allegations of contact with New Jersey.[2]  The Parent Defendants and the title insurance underwriters maintain

_____

[2] The Parent Defendants submitted the following affidavits in support of their motion to dismiss for lack of personal jurisdiction: (1) Declaration of Jeffrey Robertson, Assistant Secretary and Associate General Counsel of First American Corporation (Robertson Decl.); (2) Declaration of J. Allen Berryman, Chief Financial Officer of Stewart Information Services Corporation (Berryman Decl.); (3) Certification of Michael L. Gravelle, Executive Vice President, Legal and Corporate Secretary for Fidelity National Financial, Inc. (Gravelle Decl.); (4) Declaration of John R. Heitkamp, Jr., Vice President and Deputy General Counsel for Old Republic International and Old Republic Title Insurance Group (Heitkamp Decl.); (5) Declaration of Daniel Wold, General Counsel, Vice President and Secretary for Old Republic National Title Insurance Company (Wold Decl.).

separate financial records, accounts, and operations.  (Robinson Decl. ¶¶ 15-16, Berryman Decl. ¶ 8, Gravelle Cert. ¶18, Heitkamp Decl. ¶¶ 17-18.)  None of the Parent Defendants incorporated in New Jersey.  The Parent Defendants do not sell title insurance policies, perform real estate closings, or any other business in New Jersey.  (Robinson Decl. ¶ 6, Berryman Decl. ¶¶ 3-5 , Gravelle Cert. ¶¶ 4-9, Heitkamp Decl. ¶¶ 6-7, Wold Decl. ¶¶ 5.)  In fact, the Parent Defendants do not engage in any business in New Jersey at all–they do not have property, offices, bank accounts, or employees in New Jersey.  (Robinson Decl. ¶ 8, Berryman Decl. ¶ 5, Gravelle Cert. ¶ 3, Heitkamp Decl. ¶¶ 9; Wold Decl. ¶¶ 5-6.)  Plaintiffs also allege without any evidence that the CSLs are issued to the Plaintiffs "on behalf" of the Parent Defendants.  The Parent Defendants unequivocally dispute this in the submitted affidavits.  (Robinson Decl. ¶ 10, Berryman Decl. ¶ 4, Gravelle Cert. ¶ 10, Heitkamp Decl. ¶ 11; Wold Decl. ¶¶ 9.)  This Court finds no evidence that the Parent Defendants have any contact with New Jersey, nor are the settlement agents or underwriters "alter egos" of the Parent Defendants.  Plaintiffs have not alleged that the Parent Defendants actually participated in any of the transactions or closings at issue.

This Court finds that there is neither specific or general jurisdiction over the Parent Defendants.  The Defendants have no specific contacts to the events at issue here, and Plaintiffs have not shown any continuous or systematic contacts in New Jersey.  The Parent Defendants motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2) are granted.  Plaintiffs purchased title insurance from Defendants licenses to sell same in New Jersey.  The Parent Defendants add nothing to this case.

## II.  Failure to Join Indispensable or Necessary Parties

Defendants claim that the suit must be dismissed for failure to join indispensable parties.

A.  Standard of Review- Fed. R. Civ. P. 19

Fed. R. Civ. P. 19(a)(1), which governs necessary and indispensable parties, provides:

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (I) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The question before the Court is whether the settlement agents[3] are indispensable parties to this action.  There are two steps under Rule 19.  Under the first step, Rule 19(a)(1)(A) queries "'whether the district court can grant complete relief to the persons already parties to the action.'" *Rosenzweig v. Brunswick Corp.*, 2008 WL 3895485, at *3 (D.N.J. 2008) (citing *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 405 (3d Cir. 1993)).  Rule 19 "stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court." *Id.*  If the party is a "necessary" party the court must consider whether joinder is possible under Rule 19(a)(1)(B).  Under the next step, if a party is determined to be necessary but joinder is not feasible, then the court must determine whether

---

[3]  Weichert Title Agency was initially named as a settlement agent, but Plaintiffs voluntarily dismissed as to it.

the party is "indispensable" under Rule 19(b).  Because the Court finds that the settlement agents are not necessary to this action  it need not address the second prong under Rule 19.

B.  The Settlement Agents Are Not Necessary Parties to this Action

Because the Court finds that there is enough evidence alleged to indicate that the settlement agents may be the Defendants' agents the Court finds that they are not necessary parties to this action.  In *Am. Home Mortgage Co. v. First Am. Title Ins.  Co.*, the court held that: "Although the Third Circuit has never explicitly held as such, other courts have established that, like joint tortfeasors, a principal and its agent are not necessarily indispensable parties to an action even if both were allegedly involved in the wrongful acts at issue." 2007 WL 3349320, at *4 (D.N.J. Nov. 9, 2007).[4]

Defendants halfheartedly argue that there are no facts to support Plaintiffs' claim that the settlement parties were "agents" of the Defendants.  The Court disagrees.  The key to determining an agency relationship is the "principal's control over the agent."  *Am. Home Mortgage Co.,* 2007 WL 3349320 at *5 (citing Restatement (Second) of Agency §§ 2(1), 2(2)).  The *American Home* court reviewed similar CSL letters and concluded that even though the letters included disclaimers of agency, the actual purpose of the CSL tended to establish that such a relationship did in fact exist. *Id.*  After reviewing the CSL instruments in this case the Court concludes that a similar relationship

---

[4]  *Accord Scott v. First Am. Title Ins. Co*., 2007 WL 1303004, at *3 (D.N.H. 2007) ("First American appears to contend that because its agents' actions caused the alleged breach, they must be parties.  That argument ignores the doctrine of vicarious liability. To the extent First American argues that adjudication of the claim could cause harm to Advantage and Caruso based on evidence of their alleged misconduct, that is an insufficient basis for finding them to be necessary parties.") (citing *Pujol v. Shearson Am. Exp., Inc.*, 877 F.2d 132, 136 (1st Cir. 1989) ("The mere fact, however, that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party.")).

with the settlement agents may exist here.  The Defendants entered into contracts with the settlement

agents to allegedly provide closing services on their behalf.  Moreover, the Defendants issued the

CSLs to Plaintiffs, which accepted liability if the "Issuing Agent or Attorney" did not comply with

certain closing procedures.  The first paragraph of the CSL provides that the Defendant will

"reimburse you for actual loss incurred by you in connection with that closing when conducted by

the above named Issuing agent (an agent authorized to issue title insurance for the Company) . . . ."

This statement supports the argument that an agency relationship may exist.

Here, as in *American Home*, the Court concludes that the CSL letters exhibited an agency

relationship where the Defendants would indemnify Plaintiffs if certain actions by their agents

occurred.  Defendants argue that Provision F of the CSL that reads: "THIS LETTER DOES NOT

APPOINT THE ABOVE NAMED ATTORNEY AS AN AGENT" controls.[5]  However, the Court

is satisfied that an agency relationship is sufficiently alleged.  As stated above, Defendants entered

contracts with the closing attorneys and agents; also Defendants issued the CSLs directly to the

Plaintiffs and expressly indemnified certain conduct by the settlement agents.  Therefore, the Court

concludes that they are not necessary parties under Rule 19(a)(1).[6]

**III.  Motion to Dismiss For Failure to State a Claim.**

A.  Motion to Dismiss–Fed. R. Civ. P. 12(b)(6) Standard

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the

---

[5]  At trial, defendant can argue and prove that no agency relationship exists between it and
the settlement agents.

[6]  The Court has not evaluated why these settlement agents could not be joined as
Defendants under Fed. R. Civ. P. 14 if the Defendants believed they should be parties to the
action.  However, because they can be joined does not meant that they are necessary and
indispensable to this action.

Court is required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See, e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *Iqbal*, 129 S. Ct. at 1950. The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp*., 223 F.3d 165, 173 (3d Cir. 2000), *cert. denied, Forbes v. Semerenko*, 531 U.S. 1149 (2001). While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 129 S. Ct. at 1949; *Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir.1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir.1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). The Supreme Court has recently held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact), . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted); *see also Iqbal*, 129 S. Ct. at 1949-50.

11

B.  Breach of Contract

Under New Jersey law, the following elements are necessary in a claim for breach of contract: (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) plaintiff performed its own contractual duties. *National Reprographics, Inc. v. Strom,* 621 F. Supp. 2d 204, 222 (D.N.J. 2009) (citing *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 385 n. 21 (D.N.J. 2006)).  Plaintiffs' cause of action arises from an alleged breach of the CSLs with Defendants.  The pertinent parts of the CSL reads that the Defendant company will reimburse the consumer where the loss arises out of:

> 1.  Failure of the Issuing Agent or Attorney to comply with your written closing instructions that they relate to (a) the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such title or lien; or (b) the collection and payment of funds due you; or

> 2.  Fraud or misapplication of the Issuing Agent or Attorney in handling your funds in connection with the matters set forth in paragraph 1 above.

Defendants argue that this language should be interpreted narrowly and that it does not apply to any alleged act of overcharging by the settlement agents.  Specifically, Defendants argue that this letter only protects a misappropriation of funds directly affecting the title or liens.  The Court disagrees.  The CSL is an indemnification contract meant to protect individuals in the plaintiffs' position.  Plaintiffs allege that a reasonable reading of the CSL is that an overcharging of recording fees is a"misapplication of the issuing agent or attorney in handling [the buyer's] funds" and this is covered by "the disbursement of funds necessary to establish such title or lien" under paragraph 2 of the CSL.  Plaintiffs have satisfied the factors to plead a cause of action for breach of contract.

They have identified a contract, the CSL; they have alleged a breach of that contract through the settlement agents' misappropriation of the buyer's funds; they have alleged substantial damages as a result; and Plaintiffs fulfilled their own contractual duties that resulted in the issuance of the CSL.

Defendants motion to dismiss the breach of contract claim is denied.

C.  The *Gaskill* Settlement

Several of Plaintiffs' claims rely on a settlement agreement in *Gaskill v. Fidelity National Title Insurance Co. of New York, et al.*, No. 1:00-03620 (D.N.J. filed July 17, 2000). Plaintiffs allege a breach of contract claim (count II) arising from the *Gaskill* settlement and request a declaratory judgment (count III) that defendants violated the *Gaskill* settlement. Further, Defendants claim that Plaintiffs alleged violation of the *Gaskill* settlement violated the CFA (count V).

In *Gaskill*, plaintiffs alleged that the defendants overcharged them for notary fees in connection with real estate settlements. According to the settlement agreement, Plaintiffs intended to amend the Complaint to add other overcharges as well, including recording fees. In the end, the settlement agreement settled issues relating to the alleged overcharging of notary fees and certain settlement pass-through charges (including recording fees) relating to real estate closings that occurred from July 17, 1994 to June 13, 2002.

As an initial matter, the *Gaskill* class was defined for purposes of the settlement as "persons and entities on whose behalf the Settling Defendants conducted real estate settlements or closings . . . during the period of July 27, 1997 through the date of the entry of the final judgment in this case." Plaintiffs' allegations stem from transactions that occurred from 2004 through 2008. Thus, Plaintiffs claims that the Defendants are "absent" class members is misplaced. Further, after reviewing the settlement agreement, the Court does not find any provision that would allow Plaintiffs

relief as third-party beneficiaries.  It is clear that the settlement agreement expressly applied to the identified class members only.

Plaintiffs make the novel argument that the *Gaskill* settlement created an affirmative duty on the title insurance companies to supervise the settlement agents actions concerning overcharging recording fees.  The settling defendants in *Gaskill* included both title insurance companies and the settlement agents.  The "Injunctive Relief" provision in the settlement agreement  relied upon by the defendants simply states that "the Settling Defendants consent to the entry of an Order" that would enjoin them from charging monies for settlement services or charges in excess of the fees provided for in the New Jersey Land Title Insurance Rating Bureau Manual of Rates and Charges.  The provision then discusses the appropriate fees to be charged for notary costs, and makes no mention concerning recording costs.  Further, it makes no mention of a supervisory liability on behalf of the title insurance companies.  A reading of the entire instrument demonstrates that the settlement agreement was intended to be more limited than Plaintiffs allege.  Paragraph 22 of the *Gaskill* Agreement provides:

> *No Admission or Use*.  Neither this Settlement Agreement nor any proceedings in connection with it shall in any event be construed as or deemed to be evidence of any admission of lack of merit in this Litigation on the part of Plaintiffs, or any admission of any liability or wrongdoing of any nature on the part of the Settling Defendants, or of the propriety of class certification in this Litigation, nor shall this Settlement Agreement or any of the negotiations or proceedings connected with it be offered or received, directly or indirectly, in evidence or referred to in any testimony in any court, or other tribunal, in this Litigation or any other action, for any purpose other than for purposes of these settlement and dismissal proceedings.

The Court finds nothing in the settlement agreement that demonstrates a duty to "prevent the systemic fraud and misappropriation of Defendants' agents" as stated by Plaintiffs. (Compl. ¶ 253).

Moreover, the *Gaskill* settlement provides no independent remedy to pursue a claim under the CFA. If it does anything, it is to expressly preclude a future suit brought under the Agreement for a violation of a state statute.

Therefore the Court dismisses Plaintiffs' claims that rely upon the *Gaskill* settlement agreement–counts II, III, and V.

D.  Consumer Fraud Act Claim

Plaintiffs' fourth cause of action relies on the Consumer Fraud Act and attempts to bring a claim against the Defendants who allegedly "affirmatively misrepresented and knowingly concealed, suppressed and failed to disclose material facts about the recording fees actually charged by the government . . . ." (Compl. ¶ 249.)  Peculiarly, this count also repeats several claims about a violation of the *Gaskill* settlement agreement and a violation of the CFA, which is the claim in count five of the Amended Complaint.

Defendants argue that professionals and semi-professionals cannot be liable under the CFA. The purpose of the CFA is to protect consumers "by eliminating sharp practices and dealings in the marketing of merchandise and real estate." *Channel Cos., Inc. v. Britton*, 167 N.J. Super. 417, 418, (App. Div. 1979).  Additionally, the New Jersey Supreme Court has described the CFA as "aimed basically at unlawful sales and advertising practices designed to induce consumers to purchase merchandise or real estate." *Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 270 (1978).  It is well-settled under New Jersey law that learned professionals and semi-professionals are not liable under the CFA with respect to rendering professional services.  *Macedo v. Dello Russo*, 178 N.J. 340, 344-345 (2004).  These actors are generally exempt from the CFA because they are subject to testing, licensing, and regulations within their professionalized practice. *Plemmons v. Blue Chip Ins.*

*Servs., Inc.*, 387 N.J. Super. 551, 564-65 (App. Div. 2006).

In this case the settlement agents who conducted the majority of the closings were attorneys or brokers that fall within the professional exemption under the CFA. Plaintiffs argue that the 1975 amendment to the CFA that included "unlawful practices in the sale of advertisement of real estate" has partially revoked the exception for learned professionals. *See* N.J.S.A. 56:8-2. While the case law cited by the Plaintiffs partially supports this argument, the carve-out for professionals does not apply in this case. The cases cited by Plaintiffs to support their CFA claim are distinguishable, and Plaintiffs' argument has been denied by the New Jersey Supreme Court. *See generally Macedo*, 178 N.J. 340 (2004). The amendment to the CFA specifically applies to representations made that would induce a buyer to purchase the home. For example, in one case the court upheld a CFA claim against an architect because the "conduct bears directly upon the sale of a covered product (real estate) rather than the rendition of a professional service, and falls squarely within the prohibitions of the Act." *Blatterfein v. Larken Assocs.*, 323 N.J. Super. 167, 180 (App. Div. 1999). The New Jersey Supreme Court in *Macedo* distinguished the facts in *Blatterfein* from the typical case where a professional would be exempt under the CFA. The court held*,* "[i]n *Blatterfein*, an architect was held subject to the CFA for misrepresentations he made about building materials as part of a real estate merchandising scheme. In other words, although he 'happened' to be an architect, he was not functioning in that capacity when he made false representations to induce the purchase of a house." *Macedo*, 178 N.J. at 345.

Here, the Defendants were to render closing services to the Plaintiff. They were not marketing or promoting a sale of real estate. The actions complained of by Plaintiff would not have induced the sale of the real estate. The issue presently before the Court is that these agents acting

16

in their professional capacity overcharged Plaintiffs for their services. *Vort v. Hollander*, 257 N.J. Super. 56  (App. Div. 1992), *cert. denied*, 130 N.J. 599 (1992).  Defendants' motion to dismiss Plaintiffs' CFA claim is hereby granted.  Because the Court is dismissing the claim under the CFA it will not address the ancillary argument that it was insufficiently pled under Fed. R. Civ. P. 9(b).

E.  RICO Claims, Conspiracy, and Aiding and Abetting.

In general, the New Jersey Racketeer Influence and Corrupt Organizations Act (RICO) Act "makes it a crime for a person to be employed by or associated with 'an enterprise' and to engage or participate or become involved in the business of the enterprise 'through a pattern of racketeering activity.'" *State v. Ball*, 141 N.J. 142, 151 (1995) (citing N.J.S.A. 2C:41-2b-2c).  Moreover, RICO Act claims "should target only organized-crime-type activities that are substantial in nature." *Id.* at 161.  New Jersey courts have interpreted RICO claims to encompass two distinct elements: "an enterprise" and "a pattern of racketeering activity." *Id.* at 161-62.

Enterprise "includes any individual, sole proprietorship, partnership, corporation, business or charitable trust, association, or other legal entity, any union or group of individuals associated in fact although not a legal entity, and it includes illicit as well as licit enterprises and governmental as well as other entities."  N.J.S.A. 2C:41-1.  Further, in *State v. Ball*, the court held that

> [t]he hallmark of an enterprise's organization consists rather in those kinds of interactions that become necessary when a group, to accomplish its goal, divides among its members the tasks that are necessary to achieve a common purpose.  The division of labor and the separation of functions undertaken by the participants serve as the distinguishing marks of the "enterprise" because when a group does so divide and assemble its labors in order to accomplish its criminal purposes, it must necessarily engage in a high degree of planning, cooperation and coordination, and thus, in effect, constitute itself as an "organization."

141 N.J. at 161.  A "pattern of racketeering activity" requires:

> (1) Engaging in at least two incidents of racketeering conduct one of which shall have occurred after the effective date of this act and the last of which shall have occurred within 10 years (excluding any period of imprisonment) after a prior incident of racketeering activity; and
> (2) A showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents.

*Id.* at 163.

Plaintiffs assert that Defendants have "confuse[d] what plaintiffs are required to *plead* with what they are required to *prove*."  Plaintiffs cite *Seville Industrials Machinery Corp. v. Southmost Machinery Corp.* for the proposition that it is "sufficient for a plaintiff to identify the entities that it believes are the enterprises that were marshalled against it." 742 F.2d 786, 790 (3d Cir. 1984). *Seville* is distinguishable from the present case before the Court.  In *Seville*, the plaintiff named four entities that were participating in an "enterprise" against it.  Here, Plaintiffs state that "Defendants and their settlement agents were involved in an enterprise or enterprises to conduct real estate closings, sell title insurance, and collect associated fees."  Plaintiff does not actually identify the settlement agents or allege that the settlement agents had any knowledge of each other.  While Plaintiffs argue that these settlement agents formed an "enterprise" they do so in a conclusory fashion without establishing any indication of an "organization."  At most, Plaintiffs have set forth facts of many different independent activities by settlement agents with no connection to any enterprise.  Additionally, Plaintiffs have not sued these settlement agents in this action and argued to the court that they are not necessary parties to this law suit.  Yet, Plaintiffs allege that they were part of an "enterprise" and committed a pattern of racketeering activities.  Plaintiffs allegations in

18

the Amended Complaint would have the Court find that they have sufficiently pled a RICO enterprise involving the entire title insurance industry on nothing more than an unsupported legal conclusion. From common experience, lawyers and title agents entering into a committed patter of activities is very doubtful. It's like herding cats.

The instructive case for what must be pled to survive a motion to dismiss is the U.S. Supreme Court's recent decision in *Iqbal*. The Court held "[w]hile a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations." 129 S. Ct. at 1949. In this case, Plaintiffs have only made unsupported conclusions and sweeping generalities regarding the activities of the Defendants and the settlement agents. While the Court accepts Defendants' argument that it need not establish elements of a RICO claim in its entirety, it must plead some facts that indicate the existence of an enterprise. Thus, Plaintiffs RICO claim is dismissed.

Because the Plaintiffs RICO Act claim is dismissed, the Court additionally dismisses Plaintiffs' conspiracy, RICO conspiracy, and aiding and abetting claims for failure to state a cause of action upon which relief may be granted.

**CONCLUSION**

The Parent Defendants' motion to dismiss for lack of personal jurisdiction is granted. The Defendants' motion to dismiss is granted as to counts II, III, IV, V, VI and denied as to count I.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

November 16, 2009