# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

ARTHUR CHASSEN, et als,

                Plaintiffs,

v.

FIDELITY NATIONAL FINANCIAL, INC.,
et als.

                Defendants.

Civil Action No. 09-cv-00291(PGS)

MEMORANDUM AND ORDER

       This matter is before the Court on Plaintiffs' Motion for Reconsideration of this Court's Order  (ECF No. 243) and to certify an interlocutory appeal (ECF 237).  In the Order under consideration, defendants were permitted to assert arbitration as a defense, and individuals (rather than a class) were compelled to arbitrate.  Based on the legal precedent presented, the court shall reconsider.  As stated above, the Order "compelled individual arbitration" which requires re-evaluation.

       Since this memorandum is for the parties, there is no need to review all the facts; however, the language of the arbitration clauses is important.  Since each plaintiff acquired title insurance from different defendants and each policy contained an arbitration clause, the arbitration clauses are presented below[1].

---

[1]     For clarity purposes, the Court received a copy of each title insurance policy by way of  a June 20, 2012 letter from Riker Danzig, and each policy was referred to by an Exhibit number, as such the arbitration clauses set forth below refer to such exhibits as presented in the letter.

A.     **Chicago Title Insurance Company**

Exhibit 1 Hereto: Paragraph 13 of the Conditions and Stipulations Section of the 1992 ALTA Loan Policy, the same type issued in connection with the Hoffman, Meredith I and Meredith II, Oster, and Scrimer Transactions.

13.    Arbitration

Unless prohibited by applicable law, either the Company or the Insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American arbitration Association, Arbitrable matters may include, but are not limited to, any controversy or claim between the company and the insured arising out of or relating to this policy, any service of the Company in connection with its insurance or the breach of a policy provision or other obligation. As arbitrable matters when the Amount of Insurance $1,000,000 or less shall be arbitrated at the option of either the Company or the Insured.  All arbitrable matters when the amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to boy both the Company and the Insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or at the option of the Insurance, the Rules in effect at Date of Policy shall be binding upon the parties.  the award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys'' fees to a prevailing party.  Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the place of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the rules may be obtained from the Company upon request.

Exhibit 2 Hereto:   Paragraph 13 of the Conditions Section of the 1987 ALTA Residential Title Insurance Owner's Policy, the same type issued in connection with the Meredith I, Oster, and Scrimer Transactions

Arbitration.

If it is permitted in your state, you or the Company may demand arbitration.

The arbitration shall be binding upon both you and the Company.  The arbitration shall decide any matter in dispute between you and the company.

The arbitration award may:

      \*       include attorney's fees if allowed by state law.

      \*       be entered as a judgment in the proper court.

The arbitration shall be under the Title Insurance Arbitration Rules of the American Arbitration Association. You may choose current Rules or Rules in existence on Policy Date.

The law used in the arbitration is the law of the place where the property is located.

You can get a copy of the Rules from the Company.

Exhibit 3 Hereto:   Paragraph 14 of the Conditions and Stipulations Section of the 1992 ALTA Residential Title Insurance Owner's Policy, the same type issued in connection with the Hoffman Transaction

      [Not repeated, same as clause in Exhibit 1]

Exhibit 4 Hereto:   Paragraph 13 of the Conditions and Stipulations Section of the loan title Insurance policy issued in connection with the Chassen Transaction.

      [Not repeated, same as clause in Exhibit 1]

B.      **The First American Title Insurance Policy**

Exhibit 5 Hereto:   Paragraph 13 of the Conditions and Stipulations Section of the loan title Insurance policy issued in connection with the Chassen Transaction.

      [Not repeated, same as clause in Exhibit 1]

Exhibit 6 Hereto:   Paragraph 11 of the Conditions and Stipulations Section of 1987 ALTA Owners's policy, the same type issued in connection with the Chassen Transaction.

      [Not repeated, same as clause in Exhibit 2]

Exhibit 7 Hereto:   Paragraph 13 of the Conditions and Stipulations Section of 1992 ALTA Loan Policy, the same type issued in connection with the Feller Transaction.

      [Not repeated, same as clause in Exhibit 1]

C.    **Old Republic National Title Insurance Company**

Exhibit 8 Hereto:   Paragraph 8 of the Conditions Section of the owner's title Insurance policy and loan title insurance policy issued in connection with the Murphy Transaction.

        [Not repeated, same as clause in Exhibit 2]

Exhibit 9 Hereto:   Paragraph 8 of the Conditions Section of the 1987 ALTA Residential Owner's Policy, the same type issued in connection with the Murphy Transaction.

        [Not repeated, same as clause in Exhibit 2]

Exhibit 10 hereto:  Paragraph 13 of the Conditions and Stipulations Section of 1992 ALTA Loan Policy, the same type issued in connection with the Murphy Transaction

[Not repeated, same as clause in Exhibit 1]

D.    **Steward Title Guaranty Company**

Exhibit 11 Hereto: Paragraph 8 of the Conditions Section of the 1987 ALTA Residential Owner's Policy, the same type issued in connection with the Cooper Transaction.

        [Not repeated, same as clause in Exhibit 2]

Exhibit 12 Hereto. :   Paragraph 13 of the Conditions and Stipulations Section of 1992 ALTA Loan Policy, the same type issued in connection with the Cooper Transaction

        [Not repeated, same as clause in Exhibit 1]

Exhibit 13.  Paragraph 13 of the Conditions and Stipulations Section of the loan title Insurance policy issued in connection with the Scrimer Transaction

        [Not repeated, same as clause in Exhibit 1]

Interestingly, each title policy contains an arbitration clause, and some policies may contain two. For instance, in Exhibit 1, it refers to the closing of Meredith I, Oster and Scrimer, and Exhibit 2 refers to the same transactions.

Legal Standard/Motions for Reconsideration

Motions for reconsideration are governed by Fed. R. Civ. P. 59(e) and L. Civ. R. 7.1(I). The "extraordinary remedy" of reconsideration is "to be granted sparingly." *A.K. Stamping Co., Inc., v. Instrument Specialties Co., Inc.*, 106 F. Supp. 2d 627, 662 (D.N.J. 2000) (quoting *NL Indus., Inc., v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996)). The Rule "does not contemplate a Court looking to matters which were not originally presented." *Damiano v. Sony Music Entertainment, Inc.*, 975 F. Supp. 623, 634 (D.N.J. 1996) (quoting *Florham Park Chevron, Inc., v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1988)).

The Third Circuit has held that the "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotincki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986). "Reconsideration motions, however, may not be used to relitigate old matters, nor to raise arguments or present evidence that could have been raised prior to the entry of judgment." *NL Indus., Inc.*, 935 F. Supp. at 516; *See* Wright, Miller & Kane, Fed. Practice and Procedure: Civil 2d § 2810.1.  Such motions will only be granted where (1) an intervening change in the law has occurred, (2) new evidence not previously available has emerged, or (3) the need to correct a clear error of law or prevent a manifest injustice arises. *See, North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995*).*  Because reconsideration  of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted

"sparingly," *Maldonado v. Lucca*, 636 F. Supp. 621, 630 (D.N.J. 1986); and only when

"dispositive factual matters or controlling decisions of law" were brought to the Court's attention

but not considered. *Pelham v. United States*, 661 F. Supp. 1063, 1065 (D.N.J. 1987).  *See G-69 v.*

*Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990).

Over the last several months, both parties submitted cases to the Court which were not

addressed in the prior opinion.  The most important cases were:

> *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215 (3d Cir. 2012)
> *Homa v. American Express*, 2012 WL 3594231 (3d Cir. 2012)
> *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (U.S. 2010)

These cases discuss the Federal Arbitration Act, arbitration clauses, and class actions. From

reading those cases, the holdings require that I amend my original Order.  However, these cases

provide sufficient guidance so there is no reason to grant the motion to file an interlocutory

appeal because the issues have been sufficiently addressed, averting the need for an interlocutory

appeal.  For example, in this case the issue was one concerning whether the parties contemplated

class arbitration when agreeing to arbitrate.  In *Homa*, 2012 WL 3594231 at 3-4, the Third

Circuit answered the question, and explained its prior decisions when *Concepcion* was decided:

> The Supreme Court concluded that a right to class-arbitration
> depends on the contractual parties' agreement to that procedure and
> thus a state cannot impose a duty on a party to engage in
> class-arbitration in the absence of that party's agreement. Id. at
> 1750–51. The Supreme Court further held that the FAA preempted
> the enforcement of the state-law invalidation of a waiver of a right
> to class-arbitration that existed in the Concepcion agreement. On
> May 2, 2011, the Supreme Court granted the petition for a writ of
> certiorari in Litman I, vacated our judgment, and summarily
> remanded the case to us for further consideration in light of
> Concepcion. 131 S.Ct. 2872 (2011).

Based on same, it is apparent that class arbitration may be conducted only when the parties

consented to same. In reviewing the arbitration clauses none of them specifically refer to class

actions; and all the arbitration clauses appear to mandate arbitration at the option of the parties.

That is, arbitration becomes required if one party elects arbitration as its recourse.  For example,

in Exhibit 1, it states that "all arbitrable matters when the amount of insurance is 1,000,000 or

less[2] shall be arbitrated at the <u>option</u> of either the company or the insured."  Within Exhibit 1

arbitrable matters is defined as "arbitrable matters may include, but are not limited to, any

controversy arising out of or relating to this policy or service of the company in connection with

its issuance or in breach of a policy provision or other obligation."  Similarly, in Exhibit 2 the

arbitration clause is different in its terms, but the outcome is similar.  Arbitration arises at the

discretion of either party ("If it [arbitration] is permitted in your state, you or the Company may

demand arbitration.")  Moreover, the policy states that "The arbitration shall decide any matter in

dispute between you and the company." In both arbitration clauses, there is an option for

arbitration by either party over "matters in dispute."  There is nothing in either provision

specifically concerning class actions.

On April 27, 2011, the U.S. Supreme Court held that the Federal Arbitration Act ("FAA")

preempted a California judicial ruling regarding the unconscionability of class arbitration waivers

in consumer contracts.  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 , 1753 (2011). This

decision abrogated a similar New Jersey rule.  See *Litman v. Cellco P'ship*, 655 F.3d 225 (3d Cir.

2011).  See also, *Muhammad v. County Bank of Rehoboth Beach*, 912 A.2d 88 (2006). The

*Concepcion* case gave rise to defendants' request to seek arbitration because the *Litman* holding

---

[2]        Although it has not been argued, all claims concern insurance policies of amounts
less than $1 million.

was pre-empted by *Concepcion*.  The Court agrees with that position, but in this case where the arbitration clause is silent on class arbitration, how does one know whether class arbitration was agreed upon by the parties? In applying the *Stolt-Nielsen* case, Justice Alito noted "that the FAA imposes certain rules of importance, including the basic precept that arbitration is a matter of consent, not coercion."  *Id*. at 1773. (quoting *Volt Information Sciences v. Board of Trustees* 489 U.S. 468 (1989)). Hence, "whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must "give effect to the [parties'] contractual rights and expectations."  *Stolt-Nielsen* at 1773-1774. Here, as in *Stolt-Nielsen*, the question arises as to "whether the parties agreed to authorize class arbitration". *Id*. at 1776.

The issue which arises is whether the district court or the arbitrator should initially determine whether the parties agreed to authorize class arbitration.  In the *Sutter* case, the Plaintiff moved before the Superior Court to certify a class, and then requested that the class be submitted to arbitration.  The Superior Court only partially agreed with plaintiff. The Superior Court granted the motion to compel arbitration, and ordered that all procedural issues, including class certification, be resolved by the arbitrator. *Sutter* at 217. Subsequent to the arbitration, the issue was raised before the District Court on a motion to vacate the award. *Id*. at 218.  Under Federal law, the Courts give broad deference to arbitrators' actions, and arbitrators are granted broad latitude in determining the issues before them.  Here where there is an arbitration clause, it is reasonable that the arbitrator initially determine whether there is any consent or agreement to include class arbitration within the arbitration clause as was presented in the *Sutter* case.

Once arbitration is instituted, the arbitrator must act in accordance with the terms of the arbitration clause. "When an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice, he effectively exceeds

his powers and his award with be unenforceable." *Sutter v. Oxford Health Plans, LLC,* 675 F. 3d

215, 220 (3d Cir. 2011 quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp*,

363 U.S. 593, 597 (1960) ). See also *Stolt-Nielsen* at 1767.   An arbitrator may exceed his powers

by ordering class arbitration without authorization.  *Sutter* at 220.  The arbitrator must find a

contractual basis for requiring class arbitration. *Id*. In addition, the *Sutter* court explained that to

find such an such agreement may be difficult:

> The Court therefore faulted the arbitrators for imposing class
> arbitration in the absence of any agreement on the issue and on the
> basis that the parties had not intended to preclude class arbitration.
> Id. Although parties may implicitly authorize arbitrators to adopt
> necessary procedures, the Court held that "[a]n implicit agreement
> to authorize class-action arbitration . . . is not a term that the
> arbitrator may infer solely from the fact of the parties' agreement to
> arbitrate." Id. "[T]he differences between bilateral and class-action
> arbitration are too great for arbitrators to presume . . . that the
> parties' mere silence on the issue of class-action arbitration
> constitutes consent to resolve their disputes in class proceedings."
> Sutter at 221 (quoting *Stolt-Nielsen* 130 S. Ct. at 1776).

The analysis above requires the Court to reconsider its prior decision, and it is best that

the arbitrator decide the facts and law initially and if the arbitrator exceeds his powers, then the

Court will determine same on a motion to vacate award. Where the Court erred previous was by

compelling individual arbitration when the better procedure is to allow the arbitrator to initially

determine whether the parties consented to class arbitration. Neither party has indicated that it

would opt for arbitration on this basis, as the arbitration clauses allow.  In light of same, the

following Order is entered.

IT IS on this 18th day of September, 2012, ORDERED:

a.    The notice of motion for reconsideration (ECF No. 243) is granted;

b.    The Memorandum and Order of January 10, 2012 (ECF No. 237) is vacated;

c.    Notice of motion for leave to file a reply brief (ECF No. 247) is granted;

d.    Notice of motion to certify interlocutory appeal (ECF No. 238) is denied;

e.    Any party who seeks to submit the matter to arbitration including the class arbitration issue shall request same within fifteen (15) days of this Order; and

f.    the request to stay the matter and submit the matter to arbitration is denied.


_s/Peter G. Sheridan_____
PETER G. SHERIDAN, U.S.D.J.