| | |
|---|---|
| ARTHUR CHASSEN, et al., <br><br> Plaintiffs, <br> v. <br><br> FIDELITY NATIONAL FINANCIAL, INC., et al. <br><br> Defendants. | Civil Action No. 09-291 (PGS) (DEA) <br><br> **MEMORANDUM** |

**SHERIDAN, U.S.D.J.**

This matter is before the Court on Defendants' Motion for Reconsideration (ECF. No. 294). This is the most recent in a series of motions for reconsideration brought by the parties due to either an alleged error by this Court or the introduction of new and precedential case law. Although the back and forth filing of these motions has come to resemble a ping pong match between the parties, such a situation is understandable given that the relevant law is continually being developed through, as one court has described, a "puzzle of cases . . . [that] is not yet complete." *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 597 (6th Cir. 2013). Here, the puzzle analogy fits. As such, the Court will review its previous decisions in light of new case law in order to piece together the legal puzzle. A background of the prior motions in this matter is set forth below as well as a description of the impact, if any, of new case law on this Court's previous decisions.

I.

The Amended Complaint alleges that Plaintiffs, individually and on behalf of a class of similarly situated individuals, purchased, financed or refinanced residential real estate in New Jersey and "tendered . . . funds to a 'Settlement Agent' to facilitate" the transactions in accordance with the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 *et seq.* ("RESPA"). (Am. Compl. at ¶ 1). According to the Amended Complaint, Plaintiffs were charged fees for "the recording of Deeds, Mortgages and other instruments in excess of those fees actually paid by the Settlement Agent[s] for the recording of such Deeds, Mortgages and other instruments[.]" (*Id.*). The Plaintiffs seek a refund of the excess fees paid as a claim against the title policies.

On August 1, 2011, Defendants moved to compel individual arbitration based upon provisions in their respective title insurance policies even though they had failed to plead arbitration in their Answer to the Amended Class Action Complaint. (*See* Defs.' Mot. to Stay and Compel Individual Arbitration) (ECF No. 218). The Court granted Defendants' motion based upon the United States Supreme Court's decision in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). (*See* Mem. and Order of Jan. 10, 2012) (hereinafter, "Order No. 1) (ECF No. 237). Prior to *Concepcion*, the law in most states deemed arbitration clauses in small consumer transaction class actions to be void because no substantive remedy would otherwise be available to plaintiffs, i.e. the amount in controversy would be so insignificant that no rational lawyer would pursue an individual plaintiff's case. *See Concepcion*, 131 S. Ct. at 1761 (Breyer, J., dissenting); *see also Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013). The Court's January 10, 2012 Order stated, in relevant part:

> It is . . . ORDERED that Defendants' motion to stay the matter and compel individual arbitration [Docket Entry No. 218] is GRANTED and the CSL arbitration clauses are enforced and Plaintiffs' claims are arbitrable as a matter of law[.] (Mem. and Order of Jan. 10, 2012 at 6).

In response to Order No. 1, Plaintiffs moved for reconsideration. The Plaintiffs' primary argument in support of their Motion for Reconsideration was that, in light of the Third Circuit's finding that *Concepcion* compelled individual arbitration, the arbitrator, and not the Court, should determine whether the parties intended to seek individual or class arbitration. *See Sutter v. Oxford Health Plans, LLC,* 675 F. 3d 215 (3d Cir. 2012). (*See* Pls.' Mem. in Supp. of Mot. for Recons. of Jan. 10, 2012 Order) (ECF No. 243-2). By virtue of Plaintiff's Motion for Reconsideration, the Court reviewed the *Sutter* case and the arbitration clauses contained in the underlying title insurance policies in issue. Although the terms of each title insurance policy differed in some respects, the arbitration clauses included within those policies were substantially similar. Specifically, each of the arbitration clauses in question provided that either the Defendants or the insured *may* demand arbitration. Because the language of the title insurance policies makes the arbitration clauses effective only upon either party's voluntary demand for arbitration, the Court granted Plaintiff's Motion for Reconsideration because neither party had made such a demand. (*See* Mem. and Order of Sept. 18, 2012) (hereinafter, "Order No. 2") (ECF No. 253). The Court's Order granting Plaintiff's Motion for Reconsideration required that "[a]ny party . . . seek[ing] to submit the matter to arbitration including the class arbitration issue shall request same within fifteen (15) days of this Order[.]" (*Id*.).

More than fifteen days after the Court entered its Order, Defendants sought reconsideration again because, according to the Defendants, "the Court erred by failing to

address Defendants' argument that Plaintiffs waived any conceivable right to pursue class arbitration years ago." (Defs.' Mem. in Supp. of Mot. for Recons. of Sept. 18, 2012 Order at 1) (ECF No. 254-1). After consideration of the Defendants' arguments, this Court denied the Defendants' Motion for Reconsideration noting that "neither party knowingly waived arbitration because *Concepcion* changed the law [governing this matter] long after this suit was brought." (Mem. and Order of Jan. 23, 2013 at 4) (hereinafter, "Order No. 3") (ECF No. 263). In the Court's opinion, because the Supreme Court changed the law in *Concepcion* during the pendency of this case and since both parties were subject to Order No. 1, both of the parties deserved an opportunity to alter or clarify their positions regarding the pursuit of arbitration. In essence, the Court considered the issue a matter of fairness. On December 7, 2012, the Supreme Court granted *certiorari* in the Third Circuit case of *Sutter v. Oxford Health Plans, LLC,* 675 F.3d 215 (3d Cir. 2012), *cert. granted* 133 S. Ct. 786, 184 L. Ed. 2d 526 (2012), to consider the question of whether the scope of arbitration, that is whether an arbitration is class or individual, is a gateway issue for the Court to decide prior to the arbitration process taking place.

While the Supreme Court's decision in *Sutter* was pending, Defendants brought another motion requesting that Order No. 2 be certified for appeal to the Third Circuit. (Defs.' Mot. to Certify Order of Jan. 23. 2013 for Appeal) (ECF No. 264). The Court denied the Defendants' motion, however, it modified the Court's March 28, 2013 Scheduling Order to give the Defendants until July 1, 2013 to serve copies of their responsive expert disclosures and reports. (*See* Order of May 31, 2013) (hereinafter, "Order No. 4) (ECF No. 4).

Ten days after this Court issued Order No. 4, the Supreme Court decided the *Sutter* case. During a teleconference on June 25, 2013, the Court instructed the Defendants to refile their Motion for Reconsideration in light of the Supreme Court's decisions in *Sutter*, *Italian Colors*,

and *Concepcion*. The Defendants filed the instant Motion for Reconsideration on July 17, 2013. (*See* Defs.' Motion for Recons. of Orders of Sept. 18, 2012 and May 31, 2013) (ECF No. 294). The Defendants' motion seeks an Order from this Court reinstating its January 10, 2012 Order "compelling the parties to participate in individual arbitration[,]" or, alternatively, "certify[ing] for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), the gateway question of whether an arbitrator is authorized under the Federal Arbitration Act to decide if a clause provides for class or individual arbitration[.]" (*Id*.).

### III.

In deciding this motion, the Court focuses on the language in the Supreme Court's *Sutter* decision. The Defendants recognize that the Supreme Court did not explicitly hold in *Sutter* that the decision as to whether an arbitration clause provides for class or individual arbitration is a gateway issue to be decided by the District Court. (*See* Defs.' Mem. in Supp. of Mot. for Recons. of Orders of Sept. 18, 2012 and May 31, 2013 at 2).Rather, the Defendants contend that "[a]t the very least, *Sutter* leaves no doubt that the question of whether the issue of class arbitration should be decided by a court is a 'controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.' 28 U.S.C. § 1292(b)." (*Id*.). Accordingly, Defendants argue that the Court should reinstate Order No. 1 which ruled that the arbitration should proceed on an individual basis. In opposition, the Plaintiffs argue that the issue of whether individual class arbitration is a gateway issue is not ripe because neither party has in fact opted for arbitration. At oral argument on November 25, 2013, the Court reiterated its belief that the arbitration clauses within the title policies at issue require a party to engage in a two-step process in order to become effective. First, one of the parties must opt into arbitration. Second,

the parties must request that the Court decide the appropriateness of individual or class arbitration as a gateway issue. The Defendants seemed surprised by this rationale despite it having been previously set forth in the Court's September 18, 2012 Order. In a December 4, 2013 letter to the Court (ECF No. 315), Defendants, for the first time, asserted "that they have already opted into arbitration by moving to compel arbitration – on an individual basis." (*Id*. at 1). The Court interprets this assertion to mean that Defendants have decided to opt into arbitration and are now requesting that this Court determine the gateway issue of whether the arbitration clauses require class or individual arbitration. The Court addresses the gateway issue of individual or class arbitration below.

IV.

The Supreme Court granted *certiorari* in *Sutter* "to address a circuit split o[ver] whether §10(a)(4) [of the Federal Arbitration Act] allows a court to vacate an arbitral award" when an arbitrator determines that the parties to an arbitration intended to authorize class-wide arbitration despite a question as to whether the parties actually consented to class arbitration. *Sutter*, 133 S. Ct. at 2068. Stated differently, the parties sought a determination from the Supreme Court as to whether "the availability of class arbitration is a so-called 'question of arbitrability.'" *Id*. at 2068 n.2. Unfortunately, the Supreme Court did not reach that issue because "Oxford agreed that the arbitrator should determine whether its contract with Sutter authorized class procedures." *Id.* Due to Oxford's consent, the matter proceeded before the arbitrator in the ordinary course, and the arbitrator found that the arbitration clause authorized class-wide arbitration based on the "construction of the parties' agreement[.]" *Id.* at 2067 (internal quotations omitted).In affirming the decision of the Third Circuit, the Supreme Court noted that "the arbitrator did what the parties had asked: He considered their contract and decided whether it reflected an agreement to

permit class proceedings. That suffices to show that the arbitrator did not exceed his powers." *Id*. at 2069 (internal quotations omitted).

Despite having not explicitly addressed the issue in its opinion, the Defendants argue that the Supreme Court seemed to suggest in *Sutter* that a determination of class or individual arbitration is a gateway issue to be decided by the Court. The Defendants draw the Court's attention to footnote 2 of the Supreme Court's opinion which states, in relevant part:

> We would face a different issue if Oxford had argued below that the availability of class arbitration is a so-called "question of arbitrability." Those questions — "which include certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy" — are presumptively for courts to decide. *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003) (plurality opinion). A court may therefore review an arbitrator's determination of such a matter *de novo* absent "clear[] and unmistakabl[e]" evidence that the parties wanted an arbitrator to resolve the dispute. *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). *Stolt-Nielsen* made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability. See 559 U.S., at 680, 130 S. Ct. 1758, 176 L. Ed. 2d 605. *Id*. at 2068 n.2.

Defendants contend this language compels the Court to determine the arbitrability issues here. The Court's willingness to do so is tempered by Justice Kagan's conclusion, in the next sentence of footnote 2, in which she states:

> But this case gives us no opportunity to do so because Oxford agreed that the arbitrator should determine whether its contract with Sutter authorized class procedures . . . . Indeed, Oxford submitted that issue to the arbitrator not once, but twice — and the second time after *Stolt-Nielsen* flagged that it might be a question of arbitrability. *Id*.

Based on the phrase "this case gives us no opportunity to do so," this Court is somewhat reluctant to infer that footnote 2 should be interpreted so broadly to establish a new rule of law not explicitly enunciated in *Sutter*. However, given the Supreme Court's reference to *Stolt-Nielsen* and in light of several decisions from other circuit courts, this Court will venture to answer whether the availability of class arbitration is a "question of arbitrability."[1]

V.

Congress enacted the Federal Arbitration Act, 9 U.S.C. § 1 *et. seq.*, to "replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006)). As such, the statute instructs that a district court "must grant such an order [confirming an award] unless the award is vacated, modified, or corrected as prescribed" in the statute. 9 U.S.C. § 9. Section 10(a) provides four grounds for vacatur: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *See Southern*

---

[1]Within the title insurance policies, the arbitration clauses require one of the parties to elect arbitration. (*See* Order No. 2). For example, Chicago Title Insurance Company's policy states "either the Company or the Insured may demand arbitration[.]" The policy further states that "you or the Company may demand arbitration." Hence, the language contemplates that one of the parties must request arbitration before a successive application to decide the gateway issue may be entertained. The Court interprets Defendant's letter (ECF No. 315) as opting for arbitration and requesting the Court to decide the gateway issue.

*Communs. Servs. v. Thomas*, 720 F.3d 1352, 1357-58 (11th Cir. 2013). It is difficult to meet the modification or vacatur standard because the general policy is that if the arbitrator interprets the parties' contract, a district court must end its inquiry and deny a § 10(a) motion to vacate. This policy is best illustrated by the recent *Sutter* case, where the Supreme Court declined to decide the availability of class arbitration because the parties had consented to have the arbitrator determine that issue. As the Supreme Court noted "[u]nder the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Sutter*, 133 S. Ct. at 2068 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)). Once parties have subjected themselves to arbitration, there are few, if any, means to review the arbitrator's decision. As a result, as the Supreme Court has recognized, "[a]rbitration is poorly suited to the higher stakes of class litigation." *Concepcion*, 131 S. Ct. at 1752. This is so for several reasons. First, the benefits of arbitration - lower cost, greater efficiency and speed - are not as significantly realized when used in a class action. *See Stolt-Nielsen*, 559 U.S. at 685. Second, confidentiality of class members' personal data may become compromised. *Id.* at 686. Third, the commercial stakes are very significant in class action arbitration. *Id.* Lastly, due process issues arise because the rights of individuals who have not yet opted into arbitration are being adjudicated. *Sutter*, 133 S. Ct. at 2071.

In this case, the arbitration clauses do not clearly assign class arbitration to the arbiter. Here, as in *Reed Elsevier*, there is a "total absence of any reference to class-wide arbitration[.]" *Reed Elsevier*, 734 F.3d at 599. The arbitration clauses are "silent or ambiguous as to whether an arbitrator should determine the question of class-wide arbitrability; and that is not enough to wrest that decision from the courts." *Id.* (citing *Stolt-Nielsen*, 559 U.S. at 684-85). In the opinion

of this Court, there must be an actual showing of consent in order to refer a matter to class-wide arbitration.

Some of the same criteria other courts have used in determining whether parties have submitted to class-wide arbitration are present here. As noted above, these criteria include a potential decrease in the speed and efficiency of adjudication, a risk of revealing plaintiffs' confidential information, and an increase in the commercial stakes of arbitration. Here, there are hundreds of thousands of potential class members, many, if not all of whom, have not provided consent to the release of their relevant insurance policies. Moreover, many of the potential class members were presumably represented by lawyers during their purchasing, financing, or refinancing proceedings, a fact which may give rise to attorney-client privilege issues. Neither of the parties has addressed this issue; and moreover opening discovery reveals that title policies must be reviewed and the putative class members have not consented to same. In short, these factors demonstrate the need to determine class/individual arbitrability up front, in light of the confidential information which may be disclosed without consent during discovery. Accordingly, the Court finds that the issue of class-wide arbitration is a gateway issue.

The Plaintiffs rely on the recent Central District of California case of *Lee v. JPMorgan Chase & Co.*, 2013 U.S. Dist. LEXIS 165959 (C.D.Cal. Nov. 14, 2013) to distinguish the above rationale. The *Lee* Court cites the Third Circuit for the proposition that "[a]lthough contractual silence in the post-*Bazzle* era has often been treated by arbitrators as authorizing class arbitration, *Stolt-Nielsen* suggests a return to the pre-*Bazzle* line of reasoning on contractual silence, albeit decided by an arbitrator, because it focuses on what the parties agreed to – expressly or by implication." *Id.* at *12 (quoting *Vilches v. Travelers Cos.*, 413 Fed. Appx. 487, 492 n.3 (3d Cir. 2011) (internal quotation marks omitted). The *Lee* Court further recognized that "the standard for

determining when parties have consented to class arbitration is stringent." *Lee*, 2013 U.S. Dist. LEXIS 165959 at *12. In light of this standard, and the Supreme Court having held that class action matters are poorly suited for arbitration, this Court finds it should determine the gateway issue of class arbitration at an evidentiary hearing focused on whether the parties did, in fact, consent to class arbitration.


Date: January 17, 2014                                     *s/Peter G. Sheridan*
                                                           PETER G. SHERIDAN, U.S.D.J.