UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARTHUR CHASSEN, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> FIDELITY NATIONAL FINANCIAL, INC., *et al.*, <br><br> *Defendants*. | Civil Action No.: 09-cv-00291 (PGS)(DEA) <br><br> **MEMORANDUM AND ORDER DENYING CLASS CERTIFICATION** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Plaintiffs Jack and Deborah Hoffman's (the "Hoffmans" or "Plaintiffs") motion for class certification. (Mot. Class Cert., ECF No. 474). Plaintiffs seek to certify a class of individuals who (1) purchased or refinanced residential real property in New Jersey between July 1, 2003 and June 30, 2010; (2) purchased title insurance from or through Defendant Lawyers Title Insurance Corporation ("Lawyers Title" or "Defendant"); (3) were purportedly charged more by a settlement agent for the recording of a document, such as a deed and/or mortgage, than was charged by the county clerk; and (4) were not indemnified by Defendant for the alleged overpayment pursuant to the terms of a Closing Service Letter. (Mot. Class Cert., ECF No. 474-1.) For the reasons that follow, Plaintiffs' motion for class certification is denied.

I. **FACTS**

   i. **BACKGROUND**

The only claim remaining in this years-long litigation is one for breach of contract. (*See* Mem. and Order, ECF No. 108 (dismissing all other claims)). The alleged breach arises from purported fraud and/or misapplication of Plaintiffs' funds in a real estate transaction.

Specifically, Plaintiffs, on behalf of themselves and all others similarly situated (the "Proposed Class"), allege that their settlement agent unlawfully charged them money for recording closing documents beyond the true cost of recording those instruments with the county clerk. (*See generally* Moving Br., ECF No. 478). The Hoffmans claim that they relied on the HUD-1 Uniform Settlement Statement governing the transaction, which led them to believe that the closing document fees contained in the HUD-1 represented the actual amount paid by the settlement agent to the county clerk. (ECF No. 1 at 29-30.) Plaintiffs argue that the difference between the county clerk's recording fee and the amount charged by the settlement agent is subject to indemnification pursuant to a Closing Service Letter ("CSL") issued by Lawyers Title because it constitutes a fraud and/or misapplication[1] of their funds. Plaintiffs contend that Defendant breached the CSL by failing or refusing to indemnify them pursuant to the terms of the CSL. (Am. Compl. ¶¶ 231-33, ECF No. 68).

By way of overview, in the State of New Jersey, recording fees for closing documents are governed by: (1) state statute; (2) the New Jersey Land Title Insurance Rating Bureau Manual of Rates and Charges (the "Rates Manual"); and (3) additional recording fees imposed by each

---

[1] The parties do not provide a definition of "misapplication," nor does the CSL. Moreover, there does not appear to be a common law action for "misapplication" recognized under New Jersey law, or even a common law definition of the same. According to Black's Law Dictionary, misapplication is defined as "[t]he improper or illegal use of funds or property lawfully held." MISAPPLICATION, Black's Law Dictionary (11th ed. 2019).

2

county. These fees are collected by the county clerk in each county. First, according to the New Jersey statute that governs county clerk fees for recording deeds and mortgages,

> County clerks and registers of deeds and mortgages, in counties having such offices, shall charge for the services herein enumerated the following fees:
> \* \* \*
> For recording any instrument:
>    First page                                           $30.00
>    Each additional page or part thereof      $10.00

N.J. Stat. 22A:4-4.1. Second, the Rates Manual provides, in relevant part: "When an insurer or agent undertakes to record instruments in a transaction . . ., in addition to the applicable recording fees, the insurer or agent may charge an additional service charge of $5.00 for each instrument to be recorded."[2] (Decl. of Mark R. Cuker in Support of Pl. Br. in Support of Class Cert. ("Cuker Decl."), Ex. A, ¶ 7.1, ECF No. 475-1). Third, each New Jersey county has its own requirements that govern the cost of recording documents, which may impose recording fees in addition to the fees applicable under the statute (N.J. Stat. § 22A:4-4.1) and the Rates Manual. (Defendant's Statement of Undisputed Facts ("DSUF") ¶ 79, ECF No. 496).[3] For example, in Gloucester County, all paper land recordings must be accompanied by a cover sheet or a $20 fee is assessed. (*Id.* ¶ 83). As another example, Somerset County charges an extra $3 recording fee for the Homelessness Trust Fund. (*Id.* ¶ 81).

The Hoffmans allege that (1) their closing attorney charged them a recording fee in excess of what was charged by the county clerk; (2) such an overcharge was subject to reimbursement pursuant to the CSL because it constituted fraud and/or a misapplication of their

---

[2] Thus, hypothetically, under the statute and Rates Manual, recording a 10-page mortgage should cost $120 ($30 for the first page plus $90 for the additional nine pages), plus a separate service charge of $5.00.

[3] References to Plaintiffs' or Defendant's statements of material facts are undisputed, unless otherwise stated.

3

funds; and (3) Defendant breached the CSL by failing to reimburse Plaintiffs for the difference between the amounts charged by the settlement agent and the county clerk. (ECF No. 474-1.)

### ii. RESIDENTIAL REAL ESTATE TRANSACTIONS IN NEW JERSEY

By this motion, Plaintiffs seek to certify a class of individuals who purchased or refinanced residential real property in New Jersey from July 1, 2003 through June 30, 2010. (Pl. Revised Class Def., ECF No. 473). Throughout that time period, the New Jersey Supreme Court recognized a distinction "between south Jersey and north Jersey closings." *See N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.*, 1 A.3d 632, 638 (N.J. Sup. Ct. 2010). Specifically, it noted that "in south Jersey closings, a representative from the title company attends and presides over the closing and disburses all funds to complete the closing, but that in north Jersey closings, the attorney for the buyer performs the functions of the title representative." *Id.*; *see also Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 80-81 (N.J. Sup. Ct. 1993). In effect, residential real estate closings in north Jersey are generally conducted by attorneys, whereas closings in south Jersey were generally conducted by title company representatives. *See id.* Here, both types of closings are implicated, as the Proposed Class is comprised of both south and north Jersey residents.

Moreover, the Proposed Class includes individuals who were purportedly charged recording fees in excess of what was assessed by their county clerks in two types of transactions: (i) residential real estate purchases; and (ii) residential real estate refinancing transactions. Those two distinct transactions are included in the Revised Proposed Class Definition, and different legal documents must be recorded for each. For example, a deed generally need not be recorded for a refinancing, unlike an original purchase; and sometimes a power of attorney document is

4

also filed. As such, not all prospective class members were required to record the same documents and pay the same recording fees.

### iii.   THE HOFFMANS' REAL ESTATE TRANSACTION

On June 28, 2004, the Hoffmans purchased a parcel of real estate in Lanoka Harbor, New Jersey. (*Id.* ¶ 33; *see also* Certification of Michael R. O' Donnell, Esq. in Opp. to Pl. Mot. for Class Cert. ("O'Donnell Cert."), Ex. 1, ECF No. 480-4). The Hoffmans engaged Phillip Lucas, Esq. to serve as their attorney for the purchase and closing of a residential parcel of land. (*Id.* ¶ 34; O'Donnell Cert., Ex. 2, Certification of Phillip Lucas, Esq. ("Lucas Cert.") ¶ 3, ECF No. 480-4; *see also* Lucas Cert., Ex. 2 (Mr. Lucas's engagement letter)).

In connection with the closing of the residential parcel, the Ocean County Clerk charged a $60 fee to record the Hoffmans' deed and a $180 fee to record the mortgage. (Mot. Class Cert. 4 (citing Cuker Decl., Ex. B); *see also* Reply Br. at 6, ECF No. 486). However, the HUD-1 Uniform Settlement Statement ("HUD-1") reflects that, at closing, Mr. Lucas charged the Hoffmans recording fees of $100 for the deed and $250 for the mortgage. (O'Donnell Cert., Ex. A at Line 1201; *see also* Pl. Compl. Ex. 8, ECF No. 1-8). Accordingly, Mr. Lucas charged the Hoffmans $110 above what was charged by the county clerk for the recording of their deed and mortgage. Mr. Lucas also charged an attorney fee of $750. (ECF 1 Ex. B at Line 1107).

At deposition, Mr. Lucas testified that, in his capacity as the Hoffmans' attorney, he prepared the HUD-1 and handled the disbursement of all closing proceeds. (O'Donnell Cert., Ex. 7, Dep. of Phillip Lucas, Esq. ("Lucas Dep.") at 10:21-11:8). Mr. Lucas also testified that while the county clerk charged a total of $240 to record the Hoffmans' deed and mortgage, it was his decision to charge the Hoffmans the additional $110. (*See id.* at 22:8-23:13). Mr. Lucas did not discuss the recording fees with Lawyers Title or give it any portion of those fees. (*Id.* at

23:23-24:10). Indeed, he testified that the $110 charged in excess of those imposed by the county clerk "went directly" to him. (*Id.* at 24:19-22).

Although the Hoffmans were not allegedly aware of its existence at closing, Defendant issued a CSL in connection with their transaction. (Mot. Class Cert. 5; *see* DSUF ¶ 35). Plaintiffs argue that, under the CSL, Defendant agreed to reimburse the Hoffmans – and other similarly situated purchasers – for actual loss they incurred from the closing transaction due to fraud or misapplication by the authorized issuing agent (Mr. Lucas, in the Hoffmans' case).[4] (Mot. Class Cert. 3; CSL, Cuker Decl. Ex. B, ECF No. 475-2). Accordingly, Plaintiffs assert that Lawyers Title was contractually bound to reimburse them for the $110 in recording fees that exceeded the amount charged by the county clerk because it constituted a fraud or misapplication by Mr. Lucas. (*See id.* ¶¶ 1, 2).

### iv. ARBITRATION DISPUTES

In August 2011, while discovery was underway, all defendants in the action at that time moved for a stay and to compel arbitration. (ECF No. 218). Protracted motion practice concerning mandatory arbitration ensued, including an appeal to the Third Circuit.

Five years later, in September 2016, the Third Circuit affirmed this Court's order granting the motion to compel arbitration as to all defendants except Lawyers Title. (ECF Nos. 402, 429, 448); *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 294 (3d Cir. 2016). That decision was based on the fact that the other claimants had mandatory arbitration provisions in their settlement agreements, while the Hoffmans' contract contained an "Arbitration Endorsement" – which required the consent of both parties – and Defendant was unable to prove that the

---

[4] There appears to be legal and factual issues surrounding the applicability of the CSL.

Hoffmans agreed to arbitration. (Opinion, ECF No. 448-2; *see also* ECF Nos. 402, 480 at 4-5). As a result, by 2017, only the Hoffmans and Defendant remained in the case. (DSUF ¶ 19).

Following the Third Circuit's decision, Plaintiffs sought to review Defendant's closing files to determine how many policies were issued with an arbitration endorsement. (ECF No. 455; DSUF ¶ 20). Out of the 237 closing files produced by Defendant, Plaintiffs' attorney received the closing files and found that

> 50 (or about 21%) met the [revised] class definition, and has (1) An arbitration endorsement; (2) a CSL; and (3) a HUD-1 showing [the] recording fees charged were at least $20 above what was actually paid to record the documents.

(Moving Br. at 15; Cuker Decl. ¶ 11; *see also* Reply Br. at 8).[5] Defendant's expert challenged the validity of that finding made by Plaintiffs' attorney.

v. **REVISED CLASS DEFINITION**

In September 2019, Plaintiffs submitted a revised class definition. (Pl. Revised Class Def., ECF No. 473; Moving Br., ECF No. 478). Pursuant to that definition, they now seek to certify a class of all those persons:

> a) who purchased and/or financed residential real property located within the State of New Jersey ('Property') at any time beginning July 1, 2003 and ending June 30, 2010;
>
> b) for whom a CSL was issued by Defendant Lawyers Title[6];

---

[5] Of those 1490 files previously sampled, Defendant agreed to reproduce 237 full closing files from three of its six title agencies: Regional Title, Beechwood Title, and Network Title. Defendant agreed to produce those closing files, which were originally maintained by the title agents, because they were "currently in [Defendant's] possession." (ECF No. 465). According to Defendant, if Plaintiffs "want[ed] the full files from the other three title agents, they [would] have [had] to issue subpoenas calling for those files." (*Id.*). Evidently, Plaintiffs agreed to that arrangement, (*id.*), and did not subpoena the rest of the files not in Defendant's possession.

[6] Defendant charged $25 to issue each CSL. (Plaintiffs' Statement of Undisputed Facts ("PSUF") ¶ 27, ECF No. 498). Plaintiffs argue that since there was a charge for the issuance of each CSL, Defendant can identify each CSL that was issued. (*See id.* ¶ 28 (disputed)).

    c) who tendered funds to a Lawyer's Title Agency or to a 'Settlement Agent' retained by Lawyers Title to facilitate the purchase and/or finance of such Property in accordance with RESPA;

    d) whose HUD-1 for the settlement documents show they were charged fees for:

        i. the recording of Deeds and Mortgages at least $20 in excess of those fees actually paid by the Settlement Agent for the recording of such Deeds and Mortgages in accordance with *N.J.S.A.* 22A:4-4.1; and

        ii. for whom the amount actually paid by the Settlement Agent can be determined from Deeds, Mortgages and other instruments either filed in the public record with the county clerk, or copies thereof retained in the Title Agent's file, the class member's personal file

    e) who purchased title insurance at a real estate closing from Defendant Lawyers Title, through a Lawyers Title Agency;

    f) for whom the[re] currently exists, in either the class member's personal file, or the files of the Title Agency:

        i. The HUD-1 from the closing; and

        ii. an Arbitration Endorsement for the Title Insurance Policy.

(Moving Br. at 11-12; *see also* Pl. Revised Class Def., ECF No. 473).

## II. DISCUSSION

### i. CLASS CERTIFICATION

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)). To fall within this exception, a movant "must affirmatively demonstrate his compliance with Rule 23." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The Third Circuit has emphasized

that "[a]ctual, not presumed[,] conformance with Rule 23 requirements is essential." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012) (citation and quotation marks omitted).

"The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Id.* (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008)). To meet that burden, Plaintiff must show that the Proposed Class satisfies the four criteria under Rule 23(a), and that the action can be maintained under at least one of the three subsections of Rule 23(b). *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 370 (3d Cir. 2015); *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001). Under Rule 23(a), Plaintiffs must demonstrate: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequate representation. *Id.*; Fed. R. Civ. P. 23(a). Further, Plaintiffs allege the Proposed Class satisfies Rule 23(b)(3), which requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Of the four requirements under Rule 23(a), commonality will be the focus of the Court's analysis in this case. Commonality is satisfied where "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013). The class members' "claims must depend upon a common contention of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Accordingly, the Court must focus "on whether the defendant's conduct [is] common as to all of the class members[.]" *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d

Cir. 2015) (alterations in original) (quoting *Sullivan v. DB Invs., Inc*, 667 F.3d 273, 298 (3d Cir. 2011).

The predominance requirement under Rule 23(b)(3) inquires "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Marcus*, 687 F.3d at 600 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). A plaintiff "must 'demonstrate that the element of [the legal claim] is capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Id.* (alteration in original) (quoting *Hydrogen Peroxide*, 552 F.3d at 311). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *In re Lamictal Direct Purchaser Antitrust Litig.*, 957 F.3d 184, 190 (3d Cir. 2020).

As indicated by the above descriptions, "[t]he commonality and predominance requirements are closely linked." *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019). However, the predominance requirement is "'far more demanding' than the commonality requirement of Rule 23(a)." *Hydrogen Peroxide*, 552 F.3d at 311 (quoting *Amchem*, 521 U.S. at 623-24). "If the commonality requirement cannot be met, then the more stringent predominance requirement obviously cannot be met either." *Id.* Accordingly, it is appropriate to analyze the requirements of commonality and predominance together. *See Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015); *Alfaro v. First Advantage LNS Screening Sols., Inc.*, No. CV155813MASTJB, 2017 WL 3567974, at *2 (D.N.J. Aug. 16, 2017); *Coleman v. Commonwealth Land Title Ins. Co.*, 318 F.R.D. 275, 284 (E.D. Pa. Aug. 17, 2016).

Further, an "essential prerequisite" of a class action under Rule 23(b)(3) is that it "must be currently and readily ascertainable." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012). To meet that standard, a plaintiff must show that "(1) the class is defined with

reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hargrove v. Sleepy's LLC*, No. 19-2809, 2020 WL 5405596, at *1 (3d Cir. Sept. 9, 2020) (quoting *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015). "If class members are impossible to identify without extensive and individualized fact-finding or "mini-trials," then a class action is inappropriate." *Marcus*, 687 F.3d at 593.

### ii. BREACH OF CONTRACT

A district court's analysis under Rule 23(a) and 23(b) "may require [it] to address, at least in part, the merits of a plaintiff's underlying claim because 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Neale,* 794 F.3d at 370 (citing *Comcast*, 569 U.S. at 33). As part of that analysis, this Court must consider whether the prospective class can "demonstrate that its claims are capable of common proof at trial by a preponderance of the evidence." *Lamictal*, 957 F.3d at 191. Claims are capable of common proof at trial "[i]f each individual class member could rely on this same proof to prove the elements of its claim." *Id.* at 192.

Here, Plaintiffs must demonstrate beyond a preponderance of the evidence that each prospective class member would be able to rely on the same proofs to prove the elements of their breach of contract claim. Under New Jersey law, "[t]o establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Peck v. Donovan*, 565 F. App'x 66, 69-70 (3d Cir. 2012) (quoting *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007)).

In this case, Plaintiffs must prove fraud or a misapplication in order to demonstrate a breach of the CSL. (CSL, Cuker Decl., Ex. B). In their Statement of Material Facts accompanying this motion, Plaintiffs identify the following common questions of law or fact, which they claim predominate across the Proposed Class:

> a. whether the retention by Settlement Agents of class members' money in excess of actual recording fees paid constitutes 'fraud or misapplication' in handling funds which Defendant is required to indemnify under the CSL.
>
> b. whether the borrowers' failure to make a claim under the CSL is a defense to the claim when the Defendant never sent a copy of the CSL to the borrower.

(PSMF ¶ 30).

Plaintiffs argue that a case-by-case review of the potential class members' title insurance files and recorded deeds and/or mortgages will reveal a common recording overcharge, making this matter fit for class resolution. (*See* Moving Br. at 24-29). Defendant argues just the opposite – namely, that the Rule 23 requirements cannot be met because, *inter alia*, proving each individual class member's case would require highly-individualized, fact-intensive inquiries. (*See* Opp. Br. at 23-26, 30-33).

Under the terms of the CSL, Defendant allegedly agreed to reimburse prospective class members for actual loss in connection with their closing transactions where such loss arises out of a "[f]raud of or misapplication" by the settlement agent. (*Id.*). As such, in order to show that Defendant breached the CSL by failing to reimburse them for settlement agents' fraud, class members would need to prove that the settlement agents acted fraudulently in assessing an amount higher than the recording fees charged by the County Clerk.

To sustain a claim for common law fraud under New Jersey law, a plaintiff must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge

12

or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)).

### iii.  AGENCY

At many times during the litigation Defendant contends that the Rate Manual does not control the actions of a closing attorney because s/he is not an agent of the title insurer. As part of this motion for class certification, it is necessary to consider this issue.

Plaintiffs assert that Section 7.1 of the Rates Manual provides that "an insurer or agent" may only charge the recording costs imposed by statute (N.J. Stat. § 22A:4-4.1), plus "an additional service charge of $5.00 for each instrument to be recorded." (Cuker Decl., Ex. A, ¶ 7.1). Plaintiffs submit that Mr. Lucas was not permitted to charge more than $5.00 beyond the cost of recording the closing documents with the county clerk because he was Defendant's agent. (Mot. Class Cert. 2.)

On the other hand, Defendant contends that some but not all closing attorneys in the transactions at issue are Defendant's agents. Defendant contends that the Rates Manual states that attorneys are not necessarily "agents" of an insurer, and, as such, Section 7.1 may not apply to closing attorneys like Mr. Lucas, unless appropriate proof is presented. (Opp. Br. at 22). Based on that rationale, it argues that the Rates Manual does not apply to Mr. Lucas because he was not an agent of Lawyers Title and, therefore, was not limited to a $5.00 service charge in addition to the cost of recording the closing documents with the county clerk. (*See id.* at 22-23). As such, Defendant claims it was not liable for those additional fees under the CSL. Because it

believes that the Hoffman's' breach of contract claim fails on that basis. As such, Defendant argues the Hoffmans are not adequate class representatives. (Opp. Br. at 1, 21-23).

In their reply, Plaintiffs concede that the "rates manual states that a closing attorney cannot be the title insurer's agent." (Reply Br. at 4). They argue, however, that New Jersey Supreme Court case law supersedes the Rates Manual and allows Defendant to be held liable for fraudulent recording fees charged by closing attorneys under traditional agency law principles. (*See id.* at 1-4 (citing *Sears*, 634 A.2d at 74)).

In *Sears*, the Court held that a closing attorney retained by the purchaser was an agent of the title insurer and, therefore, could be held liable for the attorney's theft of closing funds. *Sears*, 634 A.2d at 77-79, 84. In reaching that conclusion, the *Sears* court noted that the title insurer retained sufficient control over the closing attorneys to give rise to an agency relationship: the insurer dealt with clients almost exclusively through "approved" attorneys, and the clients relied on those attorneys to perform functions that served the insurer. *Id.* at 82-84. As a result, the insurer "was in a position either to prevent or to protect against the loss suffered by [clients]." *Id.* at 84. More than fifteen years later, the Court clarified that an agency relationship must exist at the time the closing attorney misappropriated the client's funds in order for the title insurance agency to be held liable for the client's loss. *Stewart Title*, 1 A.3d at 640 (finding that title insurer "never represented to the [clients] that [the attorney] had actual or apparent authority to act on [title insurer's] behalf.").

Overall, in order to prove that Lawyers Title is liable to each class member for breach of contract, Plaintiffs must demonstrate that each settlement agent or closing attorney was acting as an agent of Lawyers Title when the alleged fraud or misrepresentation occurred.

### III. ANALYSIS

As an initial matter, Plaintiffs have met their burden to demonstrate that the Proposed Class is ascertainable. They have defined the class using objective criteria and established a "reliable and administratively feasible mechanism for determining" class membership. *Hargrove*, 2020 WL 5405596, at *1. The following list of proofs, if produced by each putative class member, would be sufficient to determine whether they fall within the class definition.

First, class members would have to demonstrate that an arbitration endorsement was issued to them by Defendant and that their real estate closing took place within the Proposed Class Period. (*See, e.g.,* PSDF ¶¶ 59(a)-(c)). Next, they would be required to introduce a HUD-1 showing what they were charged for the recording of their deed and/or mortgage, among other documents, and demonstrate that their settlement agent or closing attorney signed the HUD-1 to attest to the accuracy of those recording charges. (*See, e.g., id.* ¶¶ 59(d)-(e)). Then, they would have to introduce the recorded instruments to show what the county clerk actually charged.[7] (*See, e.g., id.* ¶¶ 59(f)-(g)). They would then be required to demonstrate that the amount charged by the closing agent or attorney, as reflected on the HUD-1, was at least $20 greater than the amounts charged by the clerk, keeping in mind differences in local recording fees.[8] (*See, e.g., id.*). Finally, class members would have to prove that they did not receive a refund – or offer of one – for any excessive recording fees.

---

[7] As discussed below, individual class members from Cumberland and Hunterdon counties may experience more difficulty in obtaining their recorded documents, as those counties do not provide on-line access to same. (Plaintiff's Opposition to Defendant's Statement of Material Facts ¶ 142, ECF No. 502).

[8] Each New Jersey county has its own rules that govern the cost of recording instruments, and some assess fees in addition to those applicable under the state statute, N.J. Stat. § 22A:4-4.1. (DSUF ¶ 79). Thus, merely because a HUD-1 reflects recording fees in an amount greater than what would have been charged under N.J. Stat. § 22A:4-4.1 will not necessarily mean there was truly an overcharge. As a result, county-specific recording fee rules are relevant to determine whether Defendant breached the CSL, as a separate matter from how those rules would be used to assess individualized damages.

Overall, the need to review and evaluate the above documents as to each class member does not defeat certification. In *Hargrove*, the fact that plaintiffs produced thousands of pages of driver rosters, gate logs, and pay statements which needed individualized review was not a barrier to class certification, even though there were some gaps in the record and the proposed class may have been overbroad. *Hargrove*, 2020 WL 5405596, at *11-12. The Third Circuit found that the plaintiffs met their burden to show how class members could be identified based on their documents and affidavits. *Id.* at 10-11. Likewise, Plaintiffs in the present case have provided sufficient documentation to demonstrate how class members can be identified.

Although Plaintiffs have demonstrated an objective, reliable, and administratively feasible method to ascertain their Proposed Class, they have not shown the requisite commonality and predominance under Rule 23(a) and (b). Even though the putative class members share a common legal theory, they will likely diverge with respect to key facts on the underlying breach of contract claim. Here, as in *Dukes*, Plaintiffs' "proof of commonality necessarily overlaps with [their] merits contention." *Dukes*, 564 U.S. at 352. In *Dukes*, the commonality of the plaintiffs' discrimination claim hinged on the reason for the defendant's employment decision as to each class member. *Id.* Here, the commonality of Plaintiffs' breach of contract claim hinges on whether each closing attorney or settlement agent (1) committed fraud or misapplication as to each class member, and (2) acted as Defendant's agent in each transaction. In both cases, commonality is undermined because a fact-sensitive analysis is required to resolve the legal issue on an individual basis. A summary of that analysis for the present case follows.

In order to support the argument that Defendant had an obligation to indemnify all class members for breach of contract under the CSL, Plaintiffs would need to prove there was a fraud

or misapplication in each transaction. In other words, class members would have to individually demonstrate that they did not authorize their agent or attorney to retain additional recording fees (perhaps as compensation for professional services rendered). Further, each settlement agent must have knowingly led the class member to rely on a false representation of the recording fees. That is an inherently fact-intensive inquiry which is not susceptible to common proof at trial or efficient resolution on a classwide basis.

Similarly, class members would need to individually prove that they were not refunded for any excessive recording fees charged by their agent or attorney. As Mr. Lucas explained, it is a common industry practice for closing attorneys to charge clients estimated recording fees – which are usually reflected on the HUD-1—before recording the documents with the county clerk. (Lucas Dep. at 23:1-13). Recognizing that some closing attorneys may have refunded (or offered to refund) their clients for any overpayment after recording the documents, individual attorneys would likely argue that their clients were informed of and consented to the extra recording fee, or that a refund was offered.

In sum, several questions would need to be answered as to each class member's challenged fee: (1) whether the settlement agent advised the class member that there was an additional charge beyond the county's recording fee; (2) whether the class member consented to pay the additional charge; and (3) whether the settlement agent offered or provided a refund.

Finally, in order to prove Defendant's liability, each class member may be required to show that their settlement agent or closing attorney was acting as Defendant's agent under New Jersey common law. That is, either written proof or evidence of conduct would be needed to prove that each settlement agent or closing attorney was an actual or apparent agent of Lawyers Title at the time of the transactions in question. The need for such an individualized evidentiary

process could introduce "serious administrative burdens that are incongruous with the efficiencies expected in a class action." *Marcus*, 687 F.3d at 593 (quoting *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 446 (E.D. Pa. Mar. 2, 2000)).

Overall, Plaintiffs have not demonstrated beyond a preponderance of the evidence that each class member would be able to rely on the same evidence to prove their breach of contract claim at trial. *See Lamictal*, 957 F.3d at 191-92. Factual differences such as those described above would likely give rise to "extensive and individualized fact-finding or 'mini-trials'" that could "become a major focus of the litigation." *Marcus*, 687 F.3d at 593, 598 (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009). Due to those differences, the Court does not find that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Having made this finding, it is unnecessary to address the remainder of the Rule 23 requirements.

In sum, Plaintiffs' motion fails because this action would likely give rise to numerous mini-trials to determine whether (1) each settlement agent or closing attorney breached the CSL by committing a fraud or misapplication; (2) each class member was refunded or offered a refund[9]; and (3) each settlement agent or closing attorney acted as Defendant's agent. Indeed, courts routinely deny class certification applications where, as here, class members would be required to prove their claim on a case-by-case basis. *See, e.g., In re Chiquita Brands Int'l Inc. Alien Tort Statute & S'holders Derivative Litig.*, 331 F.R.D. 675, 686 (S.D. Fla. 2019); *Allen-Wright v. Allstate Ins. Co.*, No. 07-CV-4087, 2008 WL 5336701, at *5 (E.D. Pa. Dec. 17, 2008); *Haskins*, 2014 WL 294654, at *14; *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 353 (6th

---

[9] This factor also impacts determination of damages. Although damages were not discussed in the brief, to determine the amount of damages would require an inquiry to the settlement agent as to whether a refund of any excessive amount was remitted to each Plaintiff after the closing occurred.

Cir. 2011); *Corwin v. Lawyers Title Ins. Co.*, 276 F.R.D. 484, 490 (E.D. Mich. 2011); *Scott*, 276 F.R.D. at 483-84. Accordingly, the motion for class certification is denied.

### ORDER

**THIS MATTER** having come before the Court on Plaintiff's motion for class certification (ECF No. 474); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons,

**IT IS** on this __10__ day of November, 2020;

**ORDERED** that Plaintiff's Motion for Class Certification (ECF No. 474) is **DENIED**.

_____<br>
PETER G. SHERIDAN, U.S.D.J.